# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

EDWARD DEVOUN JOHNSON,   )
                        )
    Petitioner,         )
                        )
v.                      )   Case No.  CV410-070
                        )
ALAN CARTER, *Warden*,    )
                        )
    Respondent.         )

## REPORT AND RECOMMENDATION

Edward Devoun Johnson, who is currently incarcerated at Wilcox State Prison in Abbeville, Georgia, has petitioned the Court over the respondent's opposition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  For the following reasons, the petition should be **DENIED**.

## I.  BACKGROUND

Johnson was convicted by a Chatham County jury of selling and possessing with intent to distribute cocaine, and obstruction by fleeing. (Doc. 1 at 3; doc. 12-1 at 1.)  The Georgia Court of Appeals affirmed his

conviction and sentence on January 16, 2008.  *Johnson v. State*, 289 Ga.

App. 206 (2008).  Johnson filed a federal habeas action in this Court that

was dismissed as unexhausted.  *Johnson v. St. Lawrence*, No. CV408-063

(S.D. Ga. Oct. 6, 2008).  He also moved for state habeas relief, which was

denied on October 14, 2008.  (Doc. 13-5.)  After the Georgia Supreme

Court denied Johnson's certificate of probable cause to appeal the state

habeas court's decision (doc. 13-6), he again sought federal habeas relief

in this Court.  (Doc. 1.)

Johnson raises four claims for relief:

(1) His conviction was obtained by evidence obtained pursuant to an unconstitutional search and seizure;

(2) His trial and appellate counsel, Diane McLeod, performed ineffectively by failing to pursue the search and seizure issue at trial and on appeal and by failing to "object to inconsistent testimonies;"

(3) He was subjected to "vindictive and malicious prosecution by [the] trial court and prosecutor;" and

(4) His conviction violated the "4th, 5th, 6th and 14th Amendments to the United States Constitution" and "Article I, Section I, Paragraphs IV, V, and XIV and Substantive Due Process" of the Georgia Constitution since his "arrest warrant and conviction was obtained by an uncorroborated informer's [CI] statement."

(Doc. 1 at 6; doc. 8 at 1-2.[1])

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); *see Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.")

---

[1] Johnson moved to amend his petition to include the fourth ground and to correct his answers to certain questions on the form § 2254 petition. (Doc. 8.) Respondent did not oppose the motion to amend and has responded to the fourth ground. (Doc. 12-1 at 9.) Accordingly, Johnson's motion to amend (doc. 8) is **GRANTED**.

(citations omitted). These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

So unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 125 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id.* at 123; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority. *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the

state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244

F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see McDaniel v. Brown*, ___ U.S. ___, 130 S. Ct. 665 at * 671-674 (2010).

Federal courts also must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Mason v. Allen*, 605 F.3d 1114, 1118-19 (11th Cir. 2010); *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the

summary nature of [the] decision does not lessen the deference that it is due"); *see Smith v. Spisak*, ___ U.S. ___, 130 S. Ct. 676, 688 (2010).

## III. ANALYSIS

This case took many years to work its way through state court. Initially, the state had some concerns that an informant would not testify against Johnson regarding certain sale counts.[2]   (Doc. 13-1 at 119.)

─────────────────

[2] Some factual background from the Georgia Court of Appeals:

[T]he evidence adduced at trial shows that in the summer of 2004, an agent with the Chatham-Savannah Counter Narcotics Team ("CNT") was contacted by a confidential informant whom the agent had known for many years. The informant, an admitted drug addict, advised the agent that an individual named Edward Johnson was selling cocaine at 243 Ferr[i]ll Street in Chatham County. According to the informant, she had purchased cocaine from Johnson over 150 times during a 13-year period. The informant noted that in these prior buys, Johnson sometimes stored his cocaine in small prescription or medicine bottles, which he would flush down the toilet if approached by the police. Based on this information, the agent commenced an investigation and obtained a photograph of the defendant, which the agent showed to the informant. The informant identified the person in the photograph as Edward Johnson and confirmed that he was the individual who sold cocaine.

The agent subsequently set up a "controlled buy." On July 21, 2004, the agent took the informant to a designated location near the Ferr[i]ll Street premises. The agent searched the informant, confirmed that she had no items on her person, and gave her $40 to purchase cocaine. The agent and several other CNT agents then positioned themselves in the area so that constant visual contact could be maintained with the informant as she entered and exited the premises.

The informant proceeded directly to the premises without interference. Upon entering the premises, the informant located Johnson and asked to purchase cocaine. In return for the $40 she handed to him, Johnson retrieved two white-

colored rocks from "a medicine bottle, like an aspirin, vitamin bottle type thing" and gave them to her. The entire transaction lasted approximately five minutes.

After the informant exited the premises, she proceeded directly to the pickup point and handed the agent the two rocks. The agent again searched the informant to ensure that she had no money or additional drugs on her person. The agent also performed a field test on the two rocks, which yielded a positive result for cocaine. Forensic testing at the state crime lab later confirmed that the substance was cocaine.

Thereafter, the agent sought and obtained a search warrant for the Ferr[i]ll Street premises. On July 22, 2004, eight agents with the CNT squad executed the warrant. During the search, four individuals, not including Johnson, were found on the premises and detained without incident.

As the search unfolded, two agents spotted Johnson and both yelled, "Police!" One of the two agents also yelled, "Search Warrant! Get on the ground!" In response, Johnson fled into a doorway and toward a bathroom. One of the agents pursued Johnson and tackled him, causing Johnson to fall into the bathtub as he appeared to be trying to dispose of something. When tackled, Johnson dropped an aspirin bottle out of his right hand, and it fell beside the toilet. After the agent secured Johnson and picked him up out of the bathtub, the agent noticed a prescription bottle inside the bathtub directly underneath where Johnson had fallen, near the drain. Although the prescription bottle bore the name "Thomas Jones," no one else was in the bathroom at the time of the incident other than the agent and Johnson.

Both bottles retrieved from the bathroom contained white-colored rocks. The rocks were field tested for the presence of cocaine, with positive results. The state crime lab later tested the rocks contained in the prescription bottle, which were of a larger quantity than those found in the aspirin bottle, and confirmed that the substance was cocaine.

Johnson was arrested and indicted for sale of cocaine and possession of cocaine with intent to distribute. Johnson was accused of committing the offense of sale of cocaine based on the July 21, 2004 controlled buy. He was accused of possession of cocaine with intent to distribute based on the cocaine seized in the bathroom during the July 22, 2004 search. Following a jury trial, Johnson was convicted of the two offenses.

*Johnson*, 289 Ga. App. at 206-08.

2 n.1.)  Instead, he was charged with one count of possession with intent to distribute and one count of obstruction.  (*Id.*)  The informant had a change of heart, and Johnson was reindicted for three sale counts in addition to possession with intent to distribute and obstruction by fleeing.  (*Id.*)  During his time under the first indictment, Johnson was represented by Laura Marcantonio.  (Doc. 13-1 at 115.)  She filed a suppression motion, which was ultimately denied.  (*Id.* at 115-116.)  Johnson admitted at the state habeas hearing that he had no complaints against Marcantonio.  (*Id.* at 116.)  Thereafter, he retained Diane McLeod, who represented Johnson at trial and on appeal.  (*Id.*)  In Ground 2 of his federal habeas corpus petition, he raises several claims of ineffectiveness against McLeod.  (Doc. 1 at 6.)  Those claims were raised before and examined by the state habeas court and are ripe for review here.  (Doc. 13-5 (order denying state habeas relief).)  His remaining claims, however, are procedurally defaulted.

## A.    Procedural Default

The federal courts' respect of state procedural default rules is rooted in Supreme Court precedent:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A § 2254 petitioner who fails to properly raise his federal claims in state court thus is "procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). "Such procedural default can arise two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision." *Id.* (citing *Atkins v. Singletary*, 965 F.2d 952, 956 (11th Cir. 1992)). "Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." *Id.* (citing *Snowden v. Singletary*, 135 F.3d 736, 737 (11th Cir. 1998)).

Here, the state habeas court explicitly found that Ground 3, Johnson's "Vindictive and Malicious Prosecution" claim, was procedurally defaulted under *Turpin v. Todd*, 268 Ga. 820 (1997), and *Black v. Hardin*, 255 Ga. 239 (1985), since he did not raise the claim on appeal.[3] (Doc. 13-5 at 5-6); *see* O.C.G.A. § 9-14-48(d) (prohibiting review of claims not raised in a timely manner under the proper procedure at trial or on appeal). Since "the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground," *Bailey*, 172 F.3d at 1303, this Court must respect its determination. *Atkins*, 965 F.2d at 956 ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.") (citation omitted). Accordingly, the claim is not subject to an on-the-merits review absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

---

[3] On appeal, Johnson only challenged the sufficiency of the evidence. *Johnson*, 289 Ga. App. at 206.

Similarly, Johnson's Ground 1 illegal search and seizure claim and Ground 4 unconstitutional conviction claims are unexhausted, since they were never presented on appeal or during his state habeas corpus proceedings.[4]  "Before a federal court may grant habeas relief to a state prisoner, he must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Kelley v.*

---

[4] In Ground 1, Johnson contends that his conviction was obtained pursuant to an illegal search and seizure, since he was arrested at 245 Ferrill Street but the search warrant was for 243 Ferrill Street.  (Doc. 1 at 6.)  Moreover, the pill bottles that were seized from him had the name of the 245 resident, Thomas Jones.  (*Id.*)  Respondent claims that the state habeas court "specifically found" the claim to be procedurally defaulted.  (Doc. 12-1 at 7.)  After poring over the state habeas court's order and the transcript of the state habeas proceedings, the Court is not persuaded that the state habeas judge ever made such a finding.  Johnson clearly raised the matter in his state habeas petition (doc. 13-4 at 4), but after a back and forth with the state habeas judge, it became clear that Johnson did not want to pursue a freestanding search and seizure claim and only wanted to address the issue in relation to McLeod's performance.  (Doc. 13-1 at 97 ("THE COURT: What else?  Ineffective assistance of counsel and the fact that you were charged with three separate offenses.  THE PETITIONER: Yes, sir.  THE COURT: That's it?  THE PETITIONER: That's it.  THE COURT: That's it.  Okay.  I just wanted to make sure what your contend your contentions are, so we can try to cover those in this particular hearing.  All right, sir?  THE PETITIONER: Yes, sir.  THE COURT: All right.  Now, sometimes what folk contend their contentions are is totally different that what they put in writing.  But on the record, that's what you're indicating your contentions are.  THE PETITIONER: Yes, sir.").)  Accordingly, the state habeas judge never directly addressed the matter in his order denying relief.  (Doc. 13-5 at 1 ("At the hearing, Petitioner raised the following grounds in support of his position, to wit: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) the fact that he was charged with three separate offenses.").).

*Sec'y for Dep't of Corrs.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("To properly exhaust a claim, 'the petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits.'"); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."). Because Johnson failed to raise Grounds 1 and 4 during any of his state proceedings, they are unexhausted.[5]

Although ordinarily a federal court must require a habeas petitioner to present his unexhausted claims to a state court, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default," the federal court "can forego the needless 'judicial ping-pong'" by applying the state's procedural bar rule for the state court where there is no "reasonable possibility that an exception to the procedural bar may still be available to the petitioner." *Snowden*, 135 F.3d at 736, 737; *Bailey*, 172 F.3d at

---

[5] As the Court explained in note 5, *supra*, Johnson did raise the search and seizure claim in his state habeas petition, but he abandoned it at the hearing before the state habeas judge.

1305 ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998). "The unexhausted claims should be treated as if procedurally defaulted." *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (citing *Bailey*, 172 F.3d at 1302). Here, no purpose would be served by requiring Johnson to return to the state courts in an effort to exhaust the claims first presented in his federal petition, for it is clear a state habeas court would bar them under Georgia's successive petition rule. That rule requires a petitioner to raise all grounds for relief in his initial or amended state habeas petition; any grounds not raised are considered defaulted, unless state or federal constitutional law requires review or the claim could not have reasonably been raised in the original petition. O.C.G.A. § 9-14-51. Johnson did not raise Grounds 1 and 4 in his state habeas petition despite the fact that they were available to be raised at that time.

While Grounds 1, 3, and 4 are defaulted, Johnson can overcome the defaults by showing cause and prejudice, or a fundamental miscarriage of justice. He has not done so, but he has offered an excuse for failing to

appeal certain grounds. In his motion to amend, Johnson asserts that he was unable to raise certain unspecified grounds on appeal "because the district attorney et al failed to supply me (after numerous request) with documents of the credibility of the [alleged] informer etc. because of petitioner indigency."[6] (Doc. 8 at 1.) The explanation is entirely unsatisfactory here, for several reasons. For instance, Johnson does not explain why he did not raise his Ground 4 claim before the state habeas court, even if he could not raise it on appeal without the withheld information. Despite this stumbling block, he managed to raise Ground 3 there. Consequently, Ground 4 is unexhausted and subject to the O.C.G.A. § 9-14-51 successive petition rule as a result of his own lack of diligence. Nor has Johnson has offered any reason to believe that any evidence he may have retrieved would have been useful or would have prompted McLeod to present the arguments on direct appeal. Instead, he presents the excuse in hopes of winning a court-sanctioned fishing

---

[6] While Johnson did not allege it as cause to excuse his default of Ground 1, the Court would be remiss if it did not acknowledge that he raised an independent claim of ineffective assistance of appellate counsel against McLeod for failing to raise the search and seizure issue on appeal. Attorney ineffectiveness can establish "cause" overcoming a procedural default. *Murray*, 477 U.S. at 488. Since Johnson did not explicitly raise the ineffectiveness claim as cause to excuse his default, however, the Court will address that claim *infra*. To summarize the outcome of the analysis, McLeod did not perform deficiently, so her actions cannot excuse Johnson's default in any event.

expedition. (Doc. 8 at 1; doc. 9 (affidavit complaining of difficulties in obtaining CI records); doc. 10 (motion seeking "discovery of the confidential informer, Toni Marie Rapier's credibility")). The Court rejects Johnson's explanation along with his request for § 2254 discovery.[7]

Grounds 1, 3, and 4 are procedurally defaulted, and Johnson has not shown any reason to excuse those defaults. Accordingly, those grounds should be denied.

## B. Ineffective Assistance of Counsel

In Ground 2, Johnson asserts that his trial and appellate counsel performed deficiently. (Doc. 1 at 6.) Specifically, "Diane McLeod -- although stated that she would amend errors on appeal [regarding the unconstitutional search and seizure detailed in Ground 1] -- failed to comply with her own obligations -- did not bring up the fact of the warrant being used illegally in trial court -- failed again on appeal -- her lack of diligence and failed to object to inconsist[e]nt testimonies." (*Id.*)

---

[7] A petitioner must make a factual showing sufficient to establish "good cause" for conducting discovery. Rules Governing Section 2254 Cases in the United States District Courts, Rule 6; *Bracy v. Gramley*, 520 U.S. 899, 901 (1997). Here, Johnson offers absolutely no facts in support of his request, but instead asks the Court's permission to fish for facts that may be favorable to him. But he has not come close to satisfying the Rule 6 "good cause" standard, so his motion for discovery (doc. 10) is **DENIED**.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the petitioner must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id*.

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id*. at 690. The petitioner carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689. Indeed, the petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008)

(quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the petitioner must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Here, the state habeas judge applied *Strickland* to both Johnson's trial and appellate ineffectiveness claims. As to the trial counsel claims:

> At the hearing, Petitioner testified that his ineffective assistance of trial counsel claim is comprised of four parts, to wit: (1) trial counsel failed to request a continuance in order to prepare better for Petitioner's case; (2) trial counsel did not challenge the factual discrepancies in Petitioner's case; (3) trial counsel did not challenge discrepancies pertaining to the address contained in the search warrant; and (4) trial counsel did not challenge discrepancies pertaining to the building description contained in the search warrant.

> Ms. McLeod testified at the hearing that she has been a licensed attorney in Georgia for fourteen years, and approximately sixty-five percent of her practice is devoted to the representation of criminal defendants. In preparation for Petitioner's trial, Ms. McLeod

subpoenaed witnesses, visited Petitioner, provided Petitioner with copies of the evidence in his case and studied the applicable case law that was relevant to Petitioner's case. Additionally, the record shows that a hearing was held on Petitioner's motion to suppress the evidence that was seized pursuant to the search warrant and the motion was denied.[8] The trial transcript shows that Ms. McLeod conducted a thorough cross-examination of each of the State's witnesses during which she addressed the factual inconsistencies between the police officers and the confidential informant. Accordingly, the court finds that Petitioner has failed to overcome the strong presumption that his trial counsel provided effective representation, and therefore, he has failed to meet his burden under the first prong of the *Strickland* test.

(Doc. 13-5 at 4-5 (footnote added).) While the state habeas judge's *Strickland* analysis is less thorough than it might have been, the Court is satisfied that he identified the proper Supreme Court precedent and applied it in a reasonable manner.

Nor does the Court find fault with the state habeas judge's appellate counsel determination:

In considering the deficient performance prong first, the Court finds that Ms. McLeod's decision to raise solely an insufficiency of the evidence claim on appeal was a reasonable tactical move which any competent attorney in the same situation would have made. . . . Ms. McLeod testified at the hearing on this matter that in formulating Petitioner's appeal, she determined that there were not any other appealable issues that carries as much weight or

---

[8] At his state habeas hearing, Johnson admitted that another attorney already raised the suppression issue prior to his hiring of McLeod, and he explicitly stated that he did not find any fault with his prior attorney's actions. (Doc. 13-1 at 115-116.) Consequently, it is difficult to fathom how McLeod performed deficiently at trial for failing to further pursue the matter.

more weight than the insufficiency of the evidence issue. Additionally, she testified that although Petitioner suggested other grounds for appeal -- such as the denial of the motion to suppress as well as issues with the search warrants -- there was no legal basis sufficient for her to pursue any of his suggestions.[9] Accordingly, the court finds that Petitioner has not shown that the omitted appellate issues were so clearly stronger than the error presented in order to require Ms. McLeod's decision to pursue solely an insufficiency of the evidence claim on appeal to be deemed an unreasonable one which only an incompetent attorney would have adopted. Consequently, Petitioner has failed to overcome the presumption of effective assistance of appellate counsel.

(*Id.* at 3-4.) Upon reviewing the record, the Court cannot say that the state habeas court decision was contrary to or unreasonably applied Supreme Court precedent or unreasonably determined the facts in light of the evidence presented. Hence, this Court should defer to the state habeas judge's ruling in denying Johnson's ineffectiveness claims.

---

[9] Johnson makes much of the fact that he was arrested and the drugs were found in another house, not the house described in the warrant. (Doc. 1 at 6.) Of course, the facts of the case show that he ran from police to hide in the other house and dispose of his drug stash (though Johnson suggests he was just relaxing with his neighbor). *See* note 2, *supra*. Crediting the state court's version of the facts, which have gone largely unrebutted, there was no constitutional violation. Assuming that Johnson even has standing to object to the entry into his neighbor's home, the police certainly had probable cause to arrest Johnson, and, knowing he was a drug dealer, exigent circumstances supported their entry into the house to secure him and prevent him from disposing of the drugs. *See United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991); *United States v. Floyd*, 247 F. App'x 161, 166 (11th Cir. 2007). Hence, McLeod's decision not to further pursue the matter was reasonable under the circumstances.

## IV. CONCLUSION

To the extent Johnson's claims are not procedurally defaulted, he has failed to show that the state habeas court's decision is contrary to or involved an unreasonable application of clearly established federal law, or that its decision involved an unreasonable determination of the facts. Accordingly, Johnson's § 2254 petition should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  11th  day of August, 2010.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA